1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

**United States District Court**
For the Northern District of California

12
TONIA R. RANDELL,                          No. C 05-1047 CW

13
        Plaintiff,

14
    v.                                     ORDER GRANTING
                                           DEFENDANTS'
15
LEVI STRAUSS & CO. and CINDY MOORE,        MOTION FOR
                                           SUMMARY JUDGMENT
16
        Defendants.

17
_____/

18
19
    Defendants Levi Strauss & Co. and Cindy Moore move for summary

20
judgment.  Plaintiff Tonia Randell opposes this motion.  The matter

21
was heard on March 24, 2006.  Having considered all of the papers

22
filed by the parties, the evidence cited therein and oral argument

23
on the motion, the Court grants Defendants' motion.

24
                              BACKGROUND

25
    In May, 1990, Defendant Levi Strauss hired Plaintiff, an

26
African-American woman.  Previously, Plaintiff had been working at

27
a job where she was paid approximately half of what she would be

28
paid starting at Levi Strauss.  Before Plaintiff was hired, she

signed her employment application, which, directly above her

signature, stated:

> I understand and agree that if I become employed by Levi
> Strauss & Co. . . . . my employment may be terminated by
> myself or LS & Co. at any time with or without cause and
> with or without notice.  I further agree and understand
> that only the President or Executive Vice President may
> enter into any employment agreement contrary to the above
> and then only if such employment agreement is in writing.

After accepting employment, Plaintiff signed an Acknowledgment and

Agreement of Employment Relationship, which stated:

> I acknowledge and agree that it is the policy of Levi
> Strauss . . . that unless there is a written employment
> agreement to the contrary signed by the employee and the
> President, Executive Vice-President or a Senior Vice-
> President of Levi Strauss Associates, Inc., each employee
> including myself is an employee-at-will.  I further
> acknowledge and agree that as an employee-at-will either
> I or the Company can terminate my employment at any time
> for any reason with or without cause.  I also acknowledge
> and agree that only the President, Executive Vice-
> President or a Senior Vice-President of Levi Strauss
> Associates, Inc. has the authority to enter into an
> employment agreement that changes my status as an
> employee-at-will and that no such employment agreement
> will be binding on the Company unless it is written and
> signed by an authorized officer and the employee.[1]

> Although she signed documents stating that she was an at-will

employee, Plaintiff states that she was informed that as long as

she performed all of her duties satisfactorily, she would remain

---

[1]In addition, in April, 2003 Plaintiff signed a Statement of
Commitment, which stated:

> I acknowledge that my working relationship with LS&CO. is
> "at will," meaning either party can terminate the
> relationship at any time, for any or no reason.  This
> relationship cannot be modified except in a written
> agreement signed by the Senior Vice President of Human
> Resources.  By agreeing to comply with LS&CO.'s Worldwide
> Code of Business Conduct, I understand and agree that
> there is no contract of employment created.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

employed at Levi Strauss.  Specifically Bonita Richardson, her hiring manager, told her that "Levi Strauss was a good company to work with, it was fair, it was a place that if I chose to I could retire from."  Plaintiff states that she relied on Ms. Richardson's representation in accepting a job at Levi Strauss, and that because of those statements she did not read the documents that she signed. After she started working at Levi Strauss, Ms. Richardson would tell her that she was lucky to work at Levi Strauss and that she had a career with the company.  In addition, Ms. Richardson told Plaintiff that she wanted her to move up in the company.

In 1995, Defendant Moore interviewed, and hired, Plaintiff for a position in Levi Strauss' Quality Assurance Department.  During the interview, Defendant Moore told Plaintiff that she had a job with Levi Strauss as long as she did her job, and that the Company was "like a family," "a comfortable work environment," and "a place to grow."

After being hired for this position, Plaintiff first came under Defendant Moore's supervision.  Plaintiff claims that she was the only African-American person in her department and that Defendant Moore began exhibiting hostility and animosity toward her.  Plaintiff claims that such treatment was not related to her work performance.

In 1996 or 1997, Plaintiff and a co-worker complained to human resources representative Rudy Collin that Defendant Moore was excluding Plaintiff and her co-workers, and giving preferential treatment to a newly hired temporary employee, a Caucasian female. Although Plaintiff claims that she made it clear that she felt

3

Defendant Moore's actions were racially motivated, Mr. Collin states that at no point did Plaintiff or her co-worker suggest that Defendant Moore's actions were motivated by discrimination; nor did he draw that conclusion himself. Mr. Collin notes that, as an African-American, he is "sensitive, both professionally and personally, to claims of discrimination."

In 1999, Plaintiff was transferred to a different department with a new supervisor. But in 2002, Plaintiff was transferred back to Defendant Moore's department. Plaintiff states that after learning she was being transferred back, she complained to Christy Silva, a human resources representative, that Defendant Moore would find a way to fire her and that, because she was the only Black person in the Department, Defendant Moore would take every opportunity to single her out and express her negative and hostile feelings toward Plaintiff. Ms. Silva, who is still an employee at Levi Strauss, states that, although she does not recall the details of their conversation, at no point during that meeting did Plaintiff state, or even suggest, that Defendant Moore was discriminating against her.

In 2002, Defendant Moore gave Plaintiff an unfavorable evaluation. All of Defendant Moore's previous evaluations of Plaintiff had been positive, and in 2003 Defendant Moore gave Plaintiff another positive evaluation, resulting in a raise.

In November, 2003, Plaintiff received a summons for jury duty by the San Francisco Superior Court. Levi Strauss offers its non-exempt employees paid time off for jury duty as part of its Time Off with Pay Program (TOPP). In January, 2004, Plaintiff informed

4

her co-worker Rodel Ramos, the TOPP coordinator, that she had been summoned for jury duty.  He advised her to follow the instructions on the summons.  She did.

On Friday evening, January 23, 2004, Plaintiff dialed the telephone number provided by the summons and was instructed that she was required to report for jury duty on the morning of January 26, 2004.  On that Monday morning, Plaintiff left a message at work that she would be reporting for jury duty.  Plaintiff reported to the jury assembly room and was informed she was on telephone standby.  Instead of returning to work, Plaintiff went home.  On her time card for Monday, however, Plaintiff reported nine hours of paid time off for jury duty.  Monday evening, Plaintiff called the telephone number on the summons and was informed she was on telephone standby for Tuesday, January 27, 2004.  On Tuesday, Plaintiff went to work and worked a full day.  Tuesday evening, Plaintiff again called the telephone number on the summons and was instructed to report to the jury room on Wednesday, January 28, 2004.  On Wednesday, Plaintiff went to the jury assembly room.  She was excused to leave and informed that she was on telephone standby.  Plaintiff left, picked up lunch and went to work.  On her time card for Wednesday, she reported five hours off for jury duty.  Plaintiff was not instructed to report for jury duty on Thursday or Friday, and she went to work, working full days.

Upon receiving Plaintiff's TOPP time report without any proof of jury duty, Mr. Ramos contacted the San Francisco Court for proof of jury duty.  He received a letter, stating, in part,

United States District Court

For the Northern District of California

1   Tonia Randell was not required to appear for jury service
    during the week of January 26, 2004.  She was on
2   telephone standby the entire week and not required to
    report in for jury service. . . . I have checked our
3   records for Jan. 26th and Jan. 28th and I do not see this
    juror's name on any of our lists.  She would be on a list
4   if she checked in.

5   Mr. Ramos reported this information to Defendant Moore, who

6   then contacted human resources representative Grace Downey.  Ms.

7   Downey advised Defendant Moore that misreporting TOPP time was a

8   violation of Company policy, which could result in termination.

9   According to Defendant Moore, after she consulted with Ms. Downey,

10  she informed Plaintiff that unless she could provide some evidence

11  that she was on jury duty, as reflected in her TOPP report, she

12  would be terminated for violating Company policy; Plaintiff left

13  work that day and never returned.  According to Plaintiff, however,

14  Defendant Moore came into her office on February 20, 2004 and

15  stated that she was fired for filing a false TOPP report.

16  Levi Strauss terminated Plaintiff's employment.  Defendants

17  state Plaintiff was fired for falsely reporting jury duty time off,

18  a violation of Company policy.  Plaintiff contends that she was

19  impermissibly fired based on her race, color and national origin.

20                          LEGAL STANDARD

21  Summary judgment is properly granted when no genuine and

22  disputed issues of material fact remain, and when, viewing the

23  evidence most favorably to the non-moving party, the movant is

24  clearly entitled to prevail as a matter of law.  Fed. R. Civ.

25  P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

26  Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

27  1987).

28                                6

**United States District Court**
For the Northern District of California

1    The moving party bears the burden of showing that there is no

2  material factual dispute.  Therefore, the court must regard as true

3  the opposing party's evidence, if supported by affidavits or other

4  evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815

5  F.2d at 1289.  The court must draw all reasonable inferences in

6  favor of the party against whom summary judgment is sought.

7  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

8  587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d

9  1551, 1558 (9th Cir. 1991).

10    Material facts which would preclude entry of summary judgment

11  are those which, under applicable substantive law, may affect the

12  outcome of the case.  The substantive law will identify which facts

13  are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

14  (1986).  Where the moving party does not bear the burden of proof

15  on an issue at trial, the moving party may discharge its burden of

16  production by either of two methods.  <u>Nissan Fire & Marine Ins.</u>

17  <u>Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir.

18  2000).

19        The moving party may produce evidence negating an
         essential element of the nonmoving party's case, or,
20       after suitable discovery, the moving party may show that
         the nonmoving party does not have enough evidence of an
21       essential element of its claim or defense to carry its
         ultimate burden of persuasion at trial.
22
     <u>Id.</u>
23
24    If the moving party discharges its burden by showing an

25  absence of evidence to support an essential element of a claim or

26  defense, it is not required to produce evidence showing the absence

27  of a material fact on such issues, or to support its motion with

28                                    7

**United States District Court**

For the Northern District of California

evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u>
<u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v.</u>
<u>NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the
moving party shows an absence of evidence to support the non-moving
party's case, the burden then shifts to the non-moving party to
produce "specific evidence, through affidavits or admissible
discovery material, to show that the dispute exists."  <u>Bhan</u>, 929
F.2d at 1409.

If the moving party discharges its burden by negating an
essential element of the non-moving party's claim or defense, it
must produce affirmative evidence of such negation.  <u>Nissan</u>, 210
F.3d at 1105.  If the moving party produces such evidence, the
burden then shifts to the non-moving party to produce specific
evidence to show that a dispute of material fact exists.  <u>Id.</u>

If the moving party does not meet its initial burden of
production by either method, the non-moving party is under no
obligation to offer any evidence in support of its opposition.  <u>Id.</u>
This is true even though the non-moving party bears the ultimate
burden of persuasion at trial.  <u>Id.</u> at 1107.

DISCUSSION

I.   Breach of Contract

Defendants argue that Plaintiff's breach of contract claim is
barred as a matter of law because Plaintiff had an express at-will
employment relationship with Levi Strauss.  Plaintiff responds that
she has presented credible evidence of an implied employment
contract with Levi Strauss and thus summary judgment must be
denied.

California Labor Code § 2922 provides that "an employment, having no specified term, may be terminated at the will of either party on notice to the other."  The "at-will" presumption provided in section 2922, however, may be overcome by an implied agreement not to terminate without good cause.  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 680 (1988).  The Foley court cited several factors that may be considered in determining whether such an implied agreement exists, including "'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.'"  Id. (quoting Pugh v. See's Candies, 116 Cal. App. 3d 311, 326-27 (1981), overruled on other grounds Guz v. Bechtel National, Inc., 24 Cal. 4th 317 (2000)).  An important consideration is what the parties actually and mutually understood, based on express words and on conduct.  Guz, 24 Cal. 4th at 337.  Although a statement in a written personnel policy that employment is at-will creates a presumption that employment is at-will, it does not by itself preclude a plaintiff from rebutting that presumption.  But if there is an express, written at-will employment contract signed by the employee, that presumption cannot be overcome.  Id. at 339-40.

Here, Plaintiff thrice signed agreements stating that she was an at-will employee: before she was hired, after she accepted employment and less than a year before she was terminated.  When asked if the Statement of Commitment she signed in April, 2003, confirms that as of 2003 her employment continued to be at-will,

United States District Court

For the Northern District of California

Plaintiff responded, "Based on the document today, yes."

Nonetheless, Plaintiff argues there was a breach of contract because she was informed that as long as she performed all her duties satisfactorily, she would remain employed and have a career at Levi Strauss. Specifically, Plaintiff was told by the hiring manager that "Levi Strauss was a good company to work with, it was fair, it was a place that if I chose to I could retire from," and that there were good career opportunities at Levi Strauss. Such evidence, however, is insufficient to prove an implied employment agreement. As explained in Tomlinson v. Qualcomm, Inc., 97 Cal. App. 4th 934, 944 (2002), a case Plaintiff cites, "Although the California courts will under some circumstances imply an agreement contrary to the statutorily presumed at-will status, the courts will not imply an agreement if doing so necessarily varies the terms of an express at-will employment agreement signed by the employee." Nor is Plaintiff's statement that she never read or understood any of the three agreements she signed regarding at-will employment sufficient to create a dispute of material fact, and she provides no authority to suggest otherwise. California courts have long ago found that failure to read a contract before signing is not in itself a reason to refuse its enforcement. See, e.g., Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 20 Cal. App. 3d 668, 671 (1971).

Summary judgment for Defendants is granted on the breach of contract claim.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

II.  Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants argue that Plaintiff cannot establish a breach of the implied covenant of good faith and fair dealing because there is no employment contract.  Plaintiff acknowledges that the viability of her implied covenant claim is contingent upon the viability of her breach of contract claim.  Because Plaintiff cannot establish the existence of an implied contract to terminate only for just cause, she cannot state a cause of action for breach of the implied covenant of good faith and fair dealing on the ground that she was terminated without good cause.  See Gould v. Maryland Sound Indus., Inc., 31 Cal. App. 4th 1137, 1153 (1995).

Summary judgment for Defendants is granted on the claim for breach of the implied covenant of good faith and fear dealing.

III. Fraud and Deceit

Plaintiff asserts that she was defrauded because, before she accepted employment, she was informed that, as long she competently performed her job, Levi Strauss would treat her fairly and discharge her only for good cause.  Plaintiff claims that she relied on those representations.  Defendants argue that Plaintiff's fraud and deceit claim fails because Defendants made no actionable representation or promise, and Plaintiff was not justified in relying on the representations and/or promises Plaintiff purports were made.

Actionable fraud requires an intentional misrepresentation of past or existing fact; predictions or statements as to future events are deemed opinions, and are not actionable fraud.  Borba v. Thomas, 70 Cal. App. 3d 144, 152 (1977).  As noted above, Plaintiff

states that she was told that "Levi Strauss was a good company to work with, it was fair, it was a place that if I chose to I could retire from."  Plaintiff stated that Defendant Moore told her that she had a position with Levi Strauss as long as she did her job, and that the company was "like a family," "a comfortable work environment," and "a place to grow."  These are opinions about Levi Strauss and Plaintiff's future with Levi Strauss.  And a promise of future conduct is actionable as fraud only if made without the present intent to perform.  See Magpali v. Farmers Group, Inc., 48 Cal. App. 4th 471, 481 (1996).  During her deposition Plaintiff stated that she believed Defendant Moore and Ms. Richardson were sincere at the time they made the promises.

In addition, actionable fraud requires justifiable reliance. Slivinsky v. Watkins-Johnson Co., 221 Cal. App. 3d 799, 807 (1990). Citing Slivinsky, Defendants contend that, even if Plaintiff can establish a misrepresentation or false promise, she cannot, as a matter of law, establish that she justifiably relied upon the alleged misrepresentation or false promise.  In Slivinsky, the court ruled that the plaintiff's alleged reliance on the defendant's oral promises of continuing employment was "simply not justifiable" because the representations contradicted the parties' agreement which provided that the employment was at-will.  Id.  As noted above, here, Plaintiff signed three agreements acknowledging that her employment was at-will.

In response, Plaintiff does not attempt to distinguish, or even address, any of the cases cited by Defendants.  Nor does she cite any admissible evidence.  Instead, she states that she

United States District Court

For the Northern District of California

1  "obviously justifiably relied" upon representations by her new

2  employer as indicated by her acceptance of employment.  She further

3  states that, although she believed that the representations when

4  made were sincere, she later learned that the representations were

5  false as reflected by the actions against her by Defendants.  But,

6  as held in Slivinsky, if a "plaintiff adduces no further evidence

7  of fraudulent intent than proof of nonperformance of an oral

8  promise, [s]he will never reach a jury."  Id.  Here, Plaintiff

9  produces no further evidence, and thus this claim will not reach a

10  jury.

11      To avoid summary judgment, Plaintiff must establish through

12  admissible evidence that there exists a genuine issue of material

13  fact as to each of the elements of this claim.  She does not.

14  Summary judgment for Defendants is granted on the fraud and deceit

15  claim.

16  IV.  Discrimination

17      Plaintiff brings claims against Defendants for race, color and

18  national origin discrimination in violation of California's Fair

19  Employment and Housing Act (FEHA) and 42 U.S.C. § 1981.[2]

20  Defendants argue that Plaintiff's discrimination claims fail

21  because she cannot establish a prima facie case of discrimination

22  and cannot rebut Defendants' legitimate, non-discriminatory reasons

23  _____

24      [2]Plaintiff's discrimination claims are not analyzed
separately.  Analysis of an employment discrimination claim under
25  § 1981 and FEHA follows the same legal principles as those
applicable in a Title VII disparate treatment case.  See Fonseca v.
26  Sysco Food Servs., 374 F.3d 840, 850 (9th Cir. 2004); Nidds v.
Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

27

28                                    13

for terminating her.[3]

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), the Supreme Court established a burden-shifting framework for evaluating the sufficiency of a plaintiff's evidence in employment discrimination suits. Within this framework, plaintiffs may establish a prima facie case of discrimination by reference to circumstantial evidence: plaintiffs must show that they are members of a protected class; that they were qualified for the position they held or sought; that they were subjected to an adverse employment decision; and that they were replaced by someone who was not a member of the protected class or that the circumstances of the decision otherwise raised an inference of discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993) (citing McDonnell Douglas and Burdine). Once plaintiffs establish a prima facie case, a presumption of discriminatory intent arises. Id. To overcome this presumption, the defendant must come forward with a legitimate, non-discriminatory reason for the employment decision. Id. at 506-07. If the defendant provides that explanation, the presumption disappears. See id. at 511; Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

In response to the defendant's offer of a non-discriminatory reason, plaintiffs must produce "specific, substantial evidence of

_____

[3]Defendants also argue that supervisory employees are not subject to individual liability for claims under FEHA. See, e.g., Reno v. Baird, 18 Cal. 4th 640, 663 (1998). Plaintiff offers no opposition on this issue, and the Court grants summary judgment to Defendant Moore on the FEHA claims.

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

pretext." <u>Steckl v. Motorola, Inc.</u>, 703 F.2d 392, 393 (9th Cir. 1983).  To survive summary judgment, plaintiffs must introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason the employer articulated is a pretext for discrimination.  Plaintiffs may rely on the same evidence used to establish a <u>prima facie</u> case or put forth additional evidence.  <u>See Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1282 (9th Cir. 2000); <u>Wallis</u>, 26 F.3d at 892.  The Ninth Circuit has instructed that "in deciding whether an issue of fact has been created about the credibility of the employer's nondiscriminatory reasons, the district court must look at the evidence supporting the <u>prima facie</u> case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reasons.  And, in those cases where the <u>prima facie</u> case consists of no more than the minimum necessary to create a presumption of discrimination under <u>McDonnell Douglas</u>, plaintiff has failed to raise a triable issue of fact." <u>Wallis</u>, 26 F.3d at 890.  To avoid summary judgment, plaintiffs "must tender a genuine issue of material fact as to pretext." <u>Id.</u> (quoting <u>Steckl</u>, 703 F.2d at 393); <u>see also</u> <u>Lindahl v. Air France</u>, 930 F.2d 1434, 1438 (9th Cir. 1991)(in determining whether the proffered reason is pretext, "the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact").  The factfinder's disbelief of the defendant's proffered reason, along with the elements of the <u>prima facie</u> case, may "suffice to show intentional discrimination." <u>Hicks</u>, 509 U.S. at 511.

Here, there is no dispute that Plaintiff is a member of a protected class, and that Defendants terminated her.  Plaintiff

United States District Court

For the Northern District of California

presents evidence that she was performing competently in the position she held at the time she was terminated. Although Plaintiff received an unsatisfactory work performance evaluation in 2002, she received a positive work evaluation and raise in 2003.

Defendants contend that Plaintiff produces no evidence of circumstances suggesting a discriminatory motive. But their reliance on Bradley v. Harcourt, Brace and Co., 104 F.3d 267 (9th Cir. 1996), is misplaced. Bradley held that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." 104 F.3d at 270-71. Defendants omit Bradley's requirement that both the hiring and the firing occur within a short period of time. Here, Defendant Moore hired Plaintiff for a position in Quality Assurance Department in 1995. Plaintiff was terminated almost a decade later.

Plaintiff produces circumstantial evidence of discrimination: she states that she was the only African-American in her department; that she was treated less favorably than other employees in the department; and Defendant Moore singled Plaintiff out and expressed hostile feelings toward her that were not based on her work performance.[4]

_____

[4]Defendants contend that this evidence contradicts what Plaintiff stated in her deposition. It does not. In her deposition, Plaintiff stated that Defendant Moore never criticized her work or criticized her in coaching sessions. Defendants do not point to testimony by Plaintiff that Defendant Moore never criticized her based on non-work related issues.

Regardless of whether Plaintiff presents a <u>prima facie</u> case of discrimination, Defendants have produced evidence that they had a legitimate, non-discriminatory reason for firing Plaintiff. Defendants state that Plaintiff was fired because she violated company policy by falsely reporting fourteen hours of time off for jury duty.  As Defendants note, it is undisputed that the San Francisco Superior Court sent a letter to Defendants stating that Plaintiff was not required to appear for jury service during the week and that Levi Strauss policy states that falsification of time cards is a serious offense that may lead to immediate termination. In her deposition, Plaintiff admitted that she marked on her time sheet that she was out for jury duty for nine hours on Monday and five hours on Wednesday, even though she was not.

Plaintiff submits no evidence to show that Defendants' alleged legitimate, non-discriminatory reason for firing her is pretext. She states that it was a common practice at Levi Strauss not to return to work after reporting for jury duty and that no other employee was required to return to work after reporting for jury duty.  According to Plaintiff, when Defendant Moore was summoned for jury duty she disappeared from work, even though she was on standby.  But Plaintiff was terminated for falsely reporting time off for jury duty on her time card, not for failing to return to work after reporting for jury duty.  Plaintiff provides no competent evidence that Defendant Moore or any other employee took paid time off for jury duty when they were not on jury duty.

Summary judgment for Defendants is granted on the claims for discrimination in violation of FEHA and section 1981.

17

**United States District Court**

For the Northern District of California

V.    Retaliation

Plaintiff alleges that, in addition to being fired for discriminatory reasons, she was fired in retaliation for reporting discrimination.  Defendants argue that this FEHA retaliation claim fails because she cannot show that she was engaged in protected activity that was causally connected to her termination and, as noted above, Plaintiff was terminated for a legitimate, non-retaliatory reason.

To establish a prima facie case of retaliation, Plaintiff must show that she engaged in protected activity, that she was thereafter subjected to an adverse employment action by her employer and that there was a causal link between the two.  Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69 (2000).  As Morgan explains, the causal link may be established by an inference derived from circumstantial evidence, such as the defendant's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.  Id.  "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."  Id. (quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982)).

Here, as Defendants note, Plaintiff provides no evidence to show the required causal link.  She does not address the necessary connection between reporting Defendant Moore's allegedly discriminatory behavior to human resources, the protected activity, and being terminated.  She points to no evidence showing that Defendant Moore was aware of Plaintiff's complaints of

18

United States District Court

For the Northern District of California

discrimination.   Plaintiff alleges that, after she was transferred from Defendant Moore's department, she told Ms. Amanda Cattermole, her new supervisor, who she later discovered was Defendant Moore's close friend, about her "awful experiences with Moore."  But Plaintiff does not establish how she knew that this supervisor was a close friend and thus likely told Defendant Moore about her comments; nor does Plaintiff state that she told the supervisor that she had reported Defendant Moore's discriminatory conduct to human resources.  Unlike Plaintiff, Defendants do provide evidence that Defendant Moore and Ms. Downey were not aware that Plaintiff engaged in protected activity.  In the absence of evidence that Defendant Moore and Ms. Downey were aware of Plaintiff's complaints of discrimination, the causal link necessary for a claim of retaliation cannot be established.  See id. at 73.

     In addition, Plaintiff does not address the fact that the last discrimination complaint she claims she made occurred sometime in 2002, after she learned she was being sent back to Defendant Moore's department, approximately two years before she was fired. Even assuming that Defendant Moore did know about protected activity, the time that elapsed between Plaintiff's last complaint to human resources and her termination is too long to support an inference of causation.  As the Supreme Court found, "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (inner

19

citation and quotations omitted) (no causal relationship found when adverse action was taken twenty months after protected activity); see also Manatt v. Bank of Am., NA, 339 F.3d 792, 802 (9th Cir. 2003) ("While courts may infer causation based on the proximity in time between the protected action and the allegedly retaliatory employment decision, such an inference is not possible in this case because approximately nine months lapsed between the date of Manatt's complaint and the Bank's alleged adverse decisions.") (inner citation and quotations omitted).  Furthermore, between Plaintiff's complaint and her termination, she received a positive evaluation by Defendant Moore, resulting in a raise, which undermines any inference that subsequent acts were motivated by retaliatory animus.  Manatt, 339 F.3d at 802.

Because there is no evidence of a causal link between Plaintiff's protected activity and her termination, summary judgment for Defendants is granted on the FEHA retaliation claim.

VI.  Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff's claim for intentional infliction of emotional distress fails because Defendants' alleged conduct was neither extreme or outrageous and Plaintiff's claim is barred by the California Workers' Compensation Act.

The Ninth Circuit has explained that, under the California law of intentional infliction of emotional distress, "Summary judgment is proper if a claim cannot 'reasonably be regarded as so extreme and outrageous as to permit recovery.'"  Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991) (quoting Trerice v. Blue Cross, 209 Cal. App. 3d 878, 883 (1989)).  To be considered outrageous,

the conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society."  Id.  Mere insulting language, rudeness and insensitivity do not constitute outrageous conduct.  Id.

As Defendants note, although Plaintiff contends that she was subjected to a "reign of terror," the specific facts presented at her deposition, and even in her declaration, do not support that contention.  In her deposition, Plaintiff complained that Defendant Moore sent her emails rather than speaking to her directly, left other employees phone messages concerning her schedule while not leaving Plaintiff the same messages; and asked other employees to convey information to Plaintiff rather than convey the information herself.  Plaintiff acknowledged, however, that Defendant Moore never became physically aggressive with Plaintiff or yelled at her. In her declaration, Plaintiff asserts that Defendant Moore continuously and routinely expressed hostility, animosity and contempt toward Plaintiff, took every opportunity to single Plaintiff out and express her negative feelings toward Plaintiff, issued Plaintiff an unsatisfactory performance rating in 2002 and treated a recently employed Caucasian female with few skills more favorably than she treated Plaintiff.  Plaintiff recalls an incident at a co-worker's birthday party when Defendant Moore ridiculed her, causing Plaintiff to become upset and leave the celebration.

Plaintiff's statement in her opposition that Defendant Moore's conduct was shameful, arrogant, extreme, outrageous and inhumane is not sufficient to create a material dispute of fact.  As Defendants

United States District Court
For the Northern District of California

note, Plaintiff fails to specify which facts she contends constitute the outrageous behavior that makes up her claim.  And there is no evidence in the record from which a trier of fact could reasonably find that Defendant Moore intentionally inflicted emotional distress.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324.  Defendant Moore's conduct, as alleged by Plaintiff, is not the conduct of a model supervisor.  But it is not so extreme as to go beyond all possible bounds of decency, nor does it qualify as the kind of outrageous conduct necessary to support an action for intentional infliction of emotional distress.

Because Plaintiff fails to satisfy the elements of a claim for intentional infliction of emotion distress, the Court will not address Defendants' argument that Plaintiff's claim is also precluded by the exclusivity provisions of California's Workers' Compensation Act.  Summary judgment for Defendants is granted on the intentional infliction of emotional distress claim.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment (Docket No. 17).[5]  Judgment shall enter accordingly.  Defendants shall recover their costs from Plaintiff.

IT IS SO ORDERED.

Dated: 5/12/06

_____
CLAUDIA WILKEN
United States District Judge

---

[5]To the extent that the Court relied upon evidence to which there is an objection, the parties' objections are overruled.  To the extent that the Court did not rely on such evidence, the parties' objections are overruled as moot.

*United States District Court*
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California